## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 13-23881-CIV-MARTINEZ/GOODMAN

GUARANTEE INSURANCE CO.,
a Florida Corporation,

      Plaintiff,

v.

HEFFERNAN INSURANCE BROKERS,
INC., a California Corporation; SOCIUS
INSURANCE SERVICES, INC. a
California Corporation,

      Defendants.

_____/

### OMNIBUS DISCOVERY ORDER

This Cause is before the Undersigned to resolve an outstanding issue related to Socius Insurance Services, Inc.'s ("Socius," and, together with Heffernan Insurance Brokers, Inc., "Defendants") Renewed Motion to Compel Production of Documents and Privilege Log from Plaintiff. [ECF No. 91]. Certain other issues in the motion, as well as those in several other discovery motions, were addressed in prior Orders issued by the Undersigned on May 7, 2014 and May 30, 2014. [ECF Nos. 106; 124]. However, there remains an issue regarding potential waiver of certain privileged and/or work-product-protected documents under the at-issue doctrine or through a previous, intentional

disclosure of a potentially privileged attorney-client communication containing extensive attorney work product.  This Order addresses those waiver theories.[1]

In short, the Undersigned finds that Plaintiff has not waived either the attorney-client privilege or work product protection by placing causation at issue in this case.  However, by disclosing an opinion letter from counsel containing extensive analysis of the underlying state litigation (the settlement of which led to this current litigation), Plaintiff has waived the attorney-client privilege for communications on that same specific subject matter (as described and defined below) and any work product protection that letter would otherwise be afforded—but not the work product protection afforded other materials.

## I.       Factual Background

Plaintiff, a worker's compensation insurer, filed this case on the same day that it settled an underlying state litigation.  That state litigation (the "Leon Tort Claim") was brought by a worker's compensation claimant who sued Plaintiff for intentional infliction of emotional distress based on how it handled his claim.

Defendants in the instant federal case are Plaintiff's insurance agent and insurance broker.  Plaintiff alleges that the Defendants failed to timely notify its excess

---

[1]       In a prior Order, [ECF No. 106], the Undersigned requested additional briefing on the privilege waiver issues as they related to certain requests for production propounded by Defendants.  The Undersigned's findings on the privilege issues here are equally applicable to any other requests for production or subpoenas to third parties where Plaintiff will invoke or has invoked a substantively similar privilege claim.

carrier insurer, Catlin, about the Leon Tort Claim, and that, as a result, Catlin refused to cover any portion of the Leon settlement amount.  Plaintiff's claims against Defendants, for negligence and breach of fiduciary duty, seek as damages the amount that Catlin would have paid to Plaintiff for the Leon settlement if it covered the claim in full.  One critical issue in this case is whether Defendants' alleged breaches actually caused Plaintiff's damages, and whether that causation issue is even subject to litigation in this proceeding.[2]  Many of the discovery disputes to date have related to materials on these points.

On February 17, 2014, Defendants propounded requests for production to Plaintiff that requested, among other things, a wide variety of materials related to the Leon Tort Claim.  Plaintiff, in response, asserted that much of these materials are protected from disclosure by the attorney-client privilege or work product protection. This issue was briefed extensively and the Court held two hearings on these and other related discovery issues.  The privilege issues are resolved in this Order.

---

[2]      One of the defense theories is that Catlin would not have covered this claim even if it had been timely notified of its existence, or, that if it did provide coverage, it would have only covered *some* portion of the claim, rather than the entire claim.  According to Defendants, this is because the Leon Tort Claim was meritless.  Under this theory, Defendants' alleged breach did not cause Plaintiff's damage (because the late notice is irrelevant, given that timely notice would still not, according to the defense theory, have required coverage by the excess carrier).

## II.    At-Issue Waiver

In response to Plaintiff's assertions that certain materials related to the Leon Tort

Claim or its settlement are protected as work product or by the attorney-client privilege,

Defendants argue, in part, that any applicable privilege is waived here by the "at-issue"

doctrine.   According to Defendants, Plaintiff waived the attorney-client privilege and

work product protection when it brought this suit because the litigation necessarily

places at issue the merits of the Leon Tort Claim and the reasonableness of its

settlement.  Materials related to those issues would substantiate Defendants' theory that

Catlin would not have provided full coverage, or perhaps any coverage, for the Leon

Tort Claim even if Catlin was timely notified of the claim.

This is a federal diversity action.  As such, state law, and specifically Florida state

law, governs attorney-client privilege issues, while federal law governs work product

doctrine issues.  *Milinazzo v. State Farm Ins.*, 247 F.R.D. 691, 696-700 (S.D. Fla. 2007)

(*citing* E. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 1131-32 (5th

ed. 2006), and noting that attorney-client communication issues are substantive in

nature and are therefore governed by the forum state's law, while work product

doctrine issues are considered procedural, and are therefore governed by the Federal

Rules of Civil Procedure and federal case law).  Both Florida and federal law provide

for privilege waiver via the "at-issue" doctrine, though the analysis differs somewhat

under each standard.  *See, e.g., Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504,

4

508 (Fla. 2nd DCA 2006) (applying Florida "at-issue" waiver doctrine); *Chick-fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *7 (S.D. Fla. Nov. 10, 2009) (applying federal "at-issue" waiver doctrine).

### a. At-Issue Waiver of the Attorney-Client Privilege Under Florida Law

Florida law disfavors waiver of the attorney-client privilege.  *Compare Coates*, 940 So. 2d at 508 (noting attorney-client privilege waiver is not favored in Florida and refusing to find waiver based on the at-issue doctrine) *with Christenbury v. Locke Lord Bissell & Liddell, LLP*, 285 F.R.D. 675, 683 (N.D. Ga. 2012) (applying Georgia law, discussing *Coates*, and finding waiver via the at-issue doctrine because, unlike Florida courts, Georgia courts "confine the attorney-client privilege 'to its narrowest permissible limits'") (internal citation omitted).  Under Florida law, at-issue waiver only occurs "when a party 'raises a claim that will *necessarily* require proof by way of a privileged communication.'" *Coates*, 940 So. 2d at 508 (quoting *Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 668 (Fla. 2nd DCA 2003)) (emphasis in original).  It follows that a party does not waive the privilege simply by bringing or defending a lawsuit.  *Id.* (internal citations omitted).

This case is similar to several others in Florida courts where no at-issue waiver was found.  In *Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A.*, 715 So. 2d 1021, 1022 (Fla. 4th DCA 1998), for example, the plaintiff sued defendants for legal malpractice and defendants argued that a *successor* law firm provided advice identical

to its own allegedly wrong advice, "thereby raising possible issues of causation and intervening negligence."  *Id.*  Defendants argued that any attorney-client privilege between plaintiff and that successor counsel was waived when defendants asserted that successor counsel was negligent.  The court refused to find waiver, noting that while it recognized "that the fact that respondents have pointed to the negligence of the successor firm as a defense to the malpractice suit may make the requested documents relevant . . . the mere relevance of those documents does not override the privilege."  *Id.* at 1023.

Other Florida courts have reached similar results.  The *Coates* court, also dealing with an attorney malpractice claim where the defense was that other professionals negligently provided advice, put it this way:

> Thus, for waiver to occur under the at issue doctrine, the proponent of a privilege must make a claim or raise a defense based upon the privileged matter and the proponent must necessarily use the privileged information in order to establish its claim or defense.  Here, the clients have asserted claims for damages based on the advice they received from the lawyers. The clients' claims are not based on the advice they received from their other counsel, and the lawyers have not shown that the clients must necessarily introduce communications with other counsel to prove their claims against the lawyers.

*Coates*, 940 So. 2d at 510-11; *see also Choice Rest. Acquisition Ltd. v. Whitley, Inc.*, 816 So. 2d 1165, 1167-68 (Fla. 4th DCA 2002) ("a court cannot find waiver of the [accountant-client] privilege merely because the information sought is needed by the opposing party to

provide information helpful to cross-examination or for the defense of a cause of action").

Plaintiff's claims in this case, breach of fiduciary duty[3] and negligence,[4] do not necessarily require proof that Defendants' conduct was the *only* cause of their claimed damage.  Under Florida law, Plaintiff's causation burden on negligence is just to show that, "it can reasonably be said that, but for the negligence, the damage would not have occurred."[5]  It is the *Defendants* who will seek to interject evidence of causation and intervening negligence in an effort to show that their alleged negligence was not the "but for" cause of Plaintiff's damage.  Under Florida law, Plaintiff has not put causation

---

[3]      Plaintiff's Second Amended Complaint, at paragraph 34, that "[a]s a proximate result of Defendants' breaches of their fiduciary duty, Plaintiff has suffered damages, including Catlin's denial of insurance coverage and the damages stemming from that denial."  [ECF No. 27, at p. 6].

[4]      Plaintiff's Second Amended Complaint notes, at paragraph 39, that "[a]s a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages, including Catlin's denial of insurance coverage and the damages stemming from that denial."  [ECF No. 27, at p. 7].

[5]      Florida jury instructions on causation in negligence cases provide that:

> Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, **but for the negligence, the** [loss] [injury] [or] **[damage] would not have occurred**.

*In re Standard Jury Instructions In Civil Cases-Report No. 09-01 (Reorganization of the Civil Jury Instructions)*, 35 So. 3d 666 (Fla. 2010) (emphasis added).

7

or intervening negligence directly at issue in this case, and for that reason, the Undersigned finds there has been no at-issue waiver of the attorney-client privilege.

### b. At-Issue Waiver of Work Product Protection Under Federal Law

The federal standard governing the at-issue doctrine turns on an analysis slightly different than that under Florida law.  Under the federal standard, "[f]airness may compel a finding of an implied waiver when a party asserts a claim or defense that 'requires examination of protected communications.'"  *Chick-fil-A*, 2009 WL 3763032, at *11 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).  But, even under the federal standard, in order for a court to properly find at-issue waiver, it is the holder of the privilege that must have put the information sought at issue.

The Third Circuit has dealt with a waiver issue similar in many respects to the one before the Court here.  *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994).[6]  In that case, the plaintiffs sued an insurer for its failure to defend and indemnify plaintiffs for several claims brought against them by third parties.  One of the defendant-insurer's affirmative defenses was that the claims at issue were excluded from the insured's policy because the policy only covered "damage neither expected nor intended from the standpoint of the insured."   *Id.* at 856 (internal quotation omitted).  To prove this affirmative defense, the insurer requested all evaluations or

---

[6]      This case was examined in detail by the 11th Circuit's Judge Rosenbaum when she was a magistrate judge in this district. *Stern v. O'Quinn*, 253 F.R.D. 663, 677-79 (S.D. Fla. 2008).  Her evaluation of *Rhone-Poulenc* is consistent with the one discussed here.

assessments of plaintiffs' potential liability for the claims before the policy was purchased, including those of plaintiffs' counsel.  The Third Circuit found that there was no at-issue waiver in that case because the party invoking the privilege was not the party who had put the sought-after information at issue.  In reaching this conclusion, the court acknowledged that other federal courts extended waiver further, but still refused to do so.  Specifically, the court noted that:

> Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions. *See, e.g., Byers v. Burleson,* 100 F.R.D. 436 (D.D.C. 1983); *Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975). These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

*Id.,* 32 F.3d at 864.[7]  So, in examining cases where at-issue waiver was, in its view, *properly* found, the *Rhone-Poulenc* court noted that:

> In these cases, the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. **The advice of counsel is placed in issue where the**

---

[7]      The factors Defendants cite in their brief are these very *Hearn* factors that the Third Circuit dismissed as "dubious" in *Rhone-Poulenc,* 32 F.3d at 864.

> client asserts a claim or defense, and attempts to prove that claim or
> defense by disclosing or describing an attorney client communication.

*Id.* at 863 (emphasis added).[8]

In this case, Plaintiff's counsel's work product is not necessary for Plaintiff to prove its case at trial. This is not an example of where "it would be entirely unfair for a case to turn on an issue upon which one party has no knowledge and is barred from access to the necessary information while the other party is able to use the information to establish its claim while shielding it from disclosure." *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 410-11 (N.D. Ill. 2001) (finding at-issue waiver). Plaintiff's counsel's work product is not absolutely necessary for Defendants to defend this action either. Defendants can use non-protected materials to show that Catlin would not have covered the Leon Tort Claim settlement even if Defendants had timely notified Catlin of the claim. For example, Defendants could undertake their own independent appraisal of the merits of the Leon Tort Claim and whether, and for how much, it should have been settled. There is no showing here that Defendants must have Plaintiff's counsel's work product to prove their point.

The Undersigned, applying applicable federal law, finds that the case before the Court is quite clearly *not* one where Plaintiff, the privilege-holder, has placed the advice

---

[8]     The *Rhone-Poulenc* court's reasoning is equally applicable to the work product doctrine. *Stern*, 253 F.R.D. at 678, n.6 (finding the same).

of its counsel at issue, and so the Undersigned finds there is no at-issue waiver of work product protection in this case.

### III.   Selective Disclosure Waiver

On May 3, 2010, Hinda Klein, a Conroy Simberg attorney and counsel for Plaintiff Guarantee Ins. Co. in the Leon Tort Claim, issued a comprehensive letter (the "Klein Letter") analyzing "the merits, or lack thereof" of the Leon Tort Claim.  [ECF No. 71-5, at p. 1].  That five-page letter contains extensive analysis of the Leon Tort Claim, which Leon's counsel had threatened to bring at that time, though it was not yet filed. In the week before the comprehensive attorney letter was issued, Plaintiff and Defendant Heffernan had discussed how best to submit the matter of the potential Leon Tort Claim to Plaintiff's errors and omissions insurer, XL, and had determined that the Leon Tort Claim documentation should be submitted with a cover letter from counsel.[9] The Klein Letter is that cover letter.  The Conroy Simberg law firm issued it to Plaintiff, who then shared it with Defendant Heffernan, who, in turn and with Plaintiff's consent and approval, forwarded it on to XL.  Plaintiff claims that the Klein Letter is protected by both the attorney-client privilege and work product protection.  Defendants argue that the letter's disclosure operates to waive privilege and work production protection for the Klein Letter as well as for other documents.

---

[9]      XL was put on notice of the Leon Tort Claim and did eventually provide coverage for Plaintiff's related insurance claim.  At issue in this case is Defendants' alleged failure to timely put the excess insurance carrier, Catlin, on notice of the Leon Tort Claim.

        **a.  Selective Disclosure Waiver of the Attorney Client Privilege under Florida Law**

Plaintiff acknowledges that the Klein Letter may be used by Defendants in this case because it was sent to them. However, Plaintiff argues that disclosure of the Klein Letter to Defendant Heffernan and XL was not a disclosure to a third party that vitiates any potential privilege because the three parties (Defendant Heffernan, XL, and Plaintiff) shared a common interest at the time of the disclosure, May 3, 2010. Plaintiff, as the proponent of the privilege, has the burden of proving its applicability. *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013). Plaintiff has not met its burden here.

The common interest doctrine, also known as the joint defense doctrine, allows litigants with common interests to exchange privileged information without losing the privilege, as long as certain requirements are met. *Visual Scene, Inc. v. Pilkington Bros., PLC*, 508 So. 2d 437, 442 (Fla. 3d DCA 1987). To determine whether communications were made within such a common interest, "one must first answer the questions whether the communication was 'made and maintained in confidence under circumstances where it is reasonable to assume that disclosure to third parties was not intended.'" *Id.* at 441 (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603-04 (N.D. Tex. 1981)).

"While a well-drafted joint defense agreement makes it simple for the courts to determine whether the parties intended to participate in a joint defense, an executed

agreement is not a necessary ingredient to a common interest privilege claim." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 217 (Tenn. Ct. App. 2002) (citing *Power Mosfet Techs. v. Siemens A.G.*, 206 F.R.D. 422, 425 (E.D. Tex. 2000)).  In *Visual Scene*, a Florida appellate court based its finding that two parties shared a common interest on an "affidavit attesting to a before-the-exchange agreement stating their intention to maintain confidentiality and to use the information only in preparation for trial on those issues common to both." *Visual Scene, Inc.*, 508 So. 2d at 441.  Another court in a similar position based its finding that there was a common interest on the fact that the communication at issue was "best viewed as part of an ongoing and **joint** effort to set up a common defense strategy." *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985) (emphasis added).

Plaintiff has failed to carry its burden for demonstrating that any privilege applicable to the Klein Letter was not waived via disclosure to Defendant Heffernan and XL.  First, Plaintiff only states that there was *"arguably"* a common interest.  [ECF No. 123, at p. 2].  The only fact that Plaintiff offers to support a common interest is that XL accepted coverage and agreed to pay defense costs.  But, this says nothing about the positions of the various parties at the time the disclosure was made.  The Klein Letter was sent in a package that first put XL on notice of the Leon Tort Claim.  Without prior notice of the claim, XL could not have already accepted the defense obligations of Plaintiff or otherwise agreed to participate in litigating the Leon Tort Claim.  *See, e.g.*,

13

*Liberty Mut. Fire Ins. Co. v. Kaufman*, 885 So. 2d 905 (Fla. 3d DCA 2004) (noting that insurer and insured share common interest once insurer accepts defense obligations of insured).[10]  Plaintiff has offered no argument that there was any joint intent on the part of XL and Plaintiff to set up a joint defense.  Plaintiff has not met its burden on this issue, as the party advocating for privilege, and the Undersigned finds that there was no common interest here.[11]

The Undersigned finds that by sharing the Klein Letter with Defendant Heffernan and XL, Plaintiff has waived the attorney-client privilege for communications

---

[10]     While there is little Florida caselaw on the common interest doctrine, as noted in *Cone v. Culverhouse*, 687 So. 2d 888, 892 (Fla. 2nd DCA 1997), other courts in other states have addressed facts similar to those here.  For instance, an intermediate appellate court in New York found there was no common interest between a reinsurer and an insurer, in part because while insurers are often obligated to defend insureds, a reinsurer owes no such duty to an insured.  *Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co.*, 40 A.D.3d 486, 491-92 (N.Y. App. Div. 1st Dep't 2007).  That court noted that the "mere fact" that the parties shared an interest in the outcome of litigation was not enough to create a common interest.  *Id.*  Whether or not XL is considered a reinsurer, Plaintiff has offered no support for the notion that XL would have participated (or did participate) in a joint defense of the Leon Tort Claim or that XL had a duty to defend Plaintiff.

[11]     Conceivably, Plaintiff's privilege argument could have been stronger had it argued that the Klein Letter did not operate as a waiver, because the document  was never intended to be kept confidential.  In that way, Plaintiff could argue the Klein Letter does not waive the privileged status of other communications to or from counsel that were meant to be confidential.  *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc.*, 698 So. 2d 276, 278 (Fla. 3d DCA 1997) ("Section 90.502(1)(c), Florida Statutes (1995), provides that an attorney-client communication is confidential if it is not intended to be disclosed to third parties.").  Plaintiff made no such argument.

14

from and to counsel regarding the same subject matter.[12]  *Alliant Ins. Servs., Inc. v. Riemer Ins. Grp.*, 22 So. 3d 779, 781 (Fla. 4th DCA 2009) ("if attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter.") (internal citation omitted).

Defining the scope of waived subject matter in cases such as this is often a difficult one for courts.  In general, a litigant has not waived the privilege as to all communications with the counsel in question, but, fairness dictates that "a litigant cannot pick and choose those portions of the attorney-client communications that will be disclosed, thereby disguising, garbling, or manipulating the truth."  Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 378 (4th ed. 2001).  "In practice, the interpretation given to the term 'subject matter' varies from case to case."  *Id.* at 379.

Courts determining the scope of a subject matter waiver in a particular case consider factors such as: (1) the general nature of counsel's assignment; (2) the extent to which counsel's activities in fulfilling the assignment are undifferentiated and unitary or are distinct and severable; (3) the extent to which the disclosed and undisclosed

---

[12]     Plaintiff cites *Old Stone Bank v. Farris*, 647 So. 2d 916, 917 (Fla. 4th  DCA 1994) for the proposition that disclosure of one attorney-client privileged communication does not waive the privilege as to others.  There, the party arguing waiver attempted to use the voluntary production of one attorney-client privileged communication between a bank and its counsel to open the door to *all* communications between the bank and that counsel.  That argument was meritless.  As outlined in this Order, by disclosing the Klein Letter, Plaintiff has waived privilege over other communications **on the same subject matter.**  Plaintiff's disclosure of the Klein Letter does not operate as a waiver over *all* communications with counsel.

communications share, or do not share, a common nexus with a distinct activity; (4) the circumstances in and purposes for which disclosure was made originally; (5) the circumstances in and purposes for which further disclosure is sought; (6) the risks to the interests protected by the privilege if further disclosure were to occur; and (7) the prejudice which might result without disclosure. *United States v. Skeddle*, 989 F. Supp. 917, 918-19 (N.D. Ohio 1997).

Based on these factors, the Undersigned will limit the scope of the waiver to Conroy Simberg communications to or from Plaintiff that occurred prior to the filing of the underlying state litigation, the Leon Tort Claim. Those communications subject to waiver are further limited to only those pre-suit communications, or parts of communications, that involve pre-suit analysis of the merits of the Leon Tort Claim. Fairness dictates this result. The disclosure of the Klein Letter should not operate to waive privilege as to other, post-suit communications. But, on the other hand, Defendants have a right, since this single pre-suit communication has been disclosed, to other pre-suit communications.

Conroy Simberg's ultimate appraisal of the Leon Tort Claim likely changed during the more-than-three-year period between the issuance of the Klein Letter, which generally describes the Leon Tort Claim as meritless, and the time the Leon Tort Claim was ultimately settled, for several million dollars. At the time the Klein Letter was issued, its purpose and disclosure were to notify Plaintiff's errors and omissions insurer

16

of the Leon Tort Claim.  This pre-suit appraisal of the Leon Tort Claim was based on far-less information than was available once suit was filed, or after litigation had continued for several years.  The scope of waiver announced here will strike the proper balance between fairness to the Defendants in this case, considering disclosure to some extent has already occurred, and fairness to the Plaintiff, who should not lose privilege as to all other privileged communications with Conroy Simberg simply by agreeing to the disclosure of  the Klein Letter.

**No production of privileged documents will occur at this time, however.**  Any production must await resolution of Plaintiff's most recent Motion for Protective Order, which moves for a protective order "against *all* discovery related to the merits of the Leon case, challenging the settlement amount of the Leon case or in any way attempting to relitigate the Leon case."  [ECF No. 130, at p. 1] (emphasis added).  Depending on the ruling, the Court will, if necessary, order production of privileged documents to occur, consistent with the parameters described above. If the Undersigned grants Plaintiff's motion for protective order, then the documents subject to waiver would be beyond the scope of discovery. On the other hand, an order denying the motion, even in part, would not lead to an off-limits status of the documents as irrelevant.

### b. Selective Disclosure Waiver of Work Product Protection Under Federal Law

The Undersigned finds that the voluntary disclosure of the Klein Letter generates a waiver of work product protection under federal law, but the consequences are limited.

17

The attorney-client privilege and work product protection have different purposes, and so waiver of one has no bearing on waiver of the other. *Visual Scene, Inc.*, 508 So. 2d at 442 (citing *Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 578 (S.D.N.Y. 1960)).

With work product protected materials, disclosure operates only to waive the protection for the *actual* material disclosed, not other materials. Now-11[th] Circuit-Judge Rosenbaum, faced with this issue as a magistrate judge, put it this way:

> Due to the sensitive nature of work-product materials and the policy behind maintaining their secrecy, generally speaking, when work-product protection has been waived, it is "limited to the information actually disclosed, not subject matter waiver." *Continental Casualty Co.*, 537 F. Supp. 2d at 773 (citing *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976); Epstein, *The Attorney–Client Privilege and the Work Product Doctrine* 612 (2001) ("[I]nadvertent or even intentional disclosure of work-product documents will not necessarily constitute waiver as to all such documents."); 6 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 26.70[6][c] (3d ed. 2004) at 26–467 ("A waiver of work-product protection encompasses only the items actually disclosed. Thus disclosure of some documents does not imply that work product protection has been destroyed for other documents of the same character.")).

*Stern v. O'Quinn*, 253 F.R.D. 663, 683 (S.D. Fla. 2008). Consequently, Plaintiff's disclosure generated a waiver of the Klein Letter, but the waiver does not extend to other documents that are work product protected.

**DONE AND ORDERED** in Chambers, in Miami, Florida, June 13, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>**:
Honorable Jose E. Martinez
All Counsel of Record