UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-23881-CIV-MARTINEZ/GOODMAN

GUARANTEE INSURANCE CO.,

    Plaintiff,

v.

HEFFERNAN INSURANCE BROKERS,
INC., et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

This Cause is before the Undersigned on Plaintiff Guarantee Insurance Co.'s ("Guarantee") Motion to Compel Production of Documents Being Withheld Based on Alleged Work Product Privilege (the "Motion"). [ECF No. 163]. Pursuant to Court Order [ECF No. 165], Defendants Heffernan Insurance Brokers, Inc. ("Heffernan") and Socius Insurance Services, Inc. ("Socius," and, together with Heffernan, "Defendants") filed a response in opposition to the Motion. [ECF No. 173]. The Undersigned directed, with the parties' consent, that the documents should be submitted for an *in camera, ex parte* review following a telephonic hearing on that issue held on October 3, 2014. The Undersigned has reviewed the Motion, the response, the documents submitted for *in*

*camera* review, and all other pertinent portions of the record. The Motion is **granted in part and denied in part** as follows, for the reasons outlined below.

## I. Background

Guarantee, a worker's compensation insurer, filed this case on the same day that it settled an underlying state litigation. That state litigation (the "Leon Tort Claim") was brought by Victor Leon, a worker's compensation claimant who sued Guarantee for intentional infliction of emotional distress based on its handling of his worker's compensation claim for an accident that occurred while he was employed by Altec Roofing. [ECF No. 27, p. 4]. Guarantee insured Altec Roofing for worker's compensation claims. [*Id.*].

Defendants in the instant case are Guarantee's insurance agent and insurance broker. [*Id.* at 2]. Guarantee alleges that Defendants failed to timely notify its excess carrier insurer, Catlin, about the Leon Tort Claim, and that, as a result, Catlin refused to cover any portion of the Leon Tort Claim settlement amount. [*Id.* at 4-5]. Guarantee's claims against Defendants, for negligence and breach of fiduciary duty, seek as damages the amount that Catlin would have paid to Guarantee for the Leon Tort Claim settlement if it covered the claim in full. [*Id.* at 6-7].

In this Motion, Guarantee seeks to compel production of thirteen email chains withheld by Defendants as protected work product. Guarantee believes Defendants withheld these emails so that Guarantee would not discover that Defendants first

2

realized in 2011 that they did not report the Leon Tort Claim to Catlin, and notified their own errors and omissions insurer of the oversight at that time, but did not reveal the oversight to Guarantee until Guarantee specifically inquired whether Catlin was on notice of the Leon Tort Claim in 2013. [ECF No. 163, p. 2]. In its Motion, Guarantee argues that the materials are not protected work product. [ECF No. 163]. Guarantee does not, however, argue that the materials should be produced notwithstanding any applicable work product protection. It does not, for example, contend entitlement to the documents (if deemed covered by the work product exception) under Federal Rule of Civil Procedure 26(b)(3)(A), which permits discovery of work product materials if the party seeking them shows a substantial need for them and cannot obtain their substantial equivalent by other means without undue hardship.

The thirteen email chains involve the following persons: Robert DeGroat (Socius Claims Manager), Paul Lefcourt (Socius Management Liability Practice Leader), Chris Hook (Socius Director of Operations), Michal Mathews (Heffernan Account Operations Manager), Rick Allen (Heffernan Regional Vice President), Carol Rizzo (Former Socius Director of Operations) and Kim Roman (Heffernan Director of Operations). [ECF No. 163, p. 3; ECF No. 163-4, pp. 1-3]. **None of these persons is an attorney**, and Defendants acknowledge that the only potentially applicable basis for protection for these email chains is as fact work product. [ECF No. 173, p. 4].

**II.     Analysis**

    a.  **The Standard**

This is a federal diversity action.  As such, federal law governs work product doctrine issues.  *Milinazzo v. State Farm Ins.*, 247 F.R.D. 691, 696-700 (S.D. Fla. 2007) (*citing* E. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 1131-32 (5th ed. 2006), and noting that work product doctrine issues are considered procedural, and are therefore governed by the Federal Rules of Civil Procedure and federal case law).

Defendants, as the parties claiming a privilege, have the burden of proving its applicability, including all of its essential elements. *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013); *see also In re Air Crash Near Cali, Colombia*, 959 F. Supp. 1529, 1532 (S.D. Fl. 1997) (internal quotation omitted). The burden to sustain a claim of privilege is heavy because privileges are "'not lightly created nor expansively construed, for they are in derogation of the search for the truth.'" *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fl. 2011) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

The work product protection doctrine protects materials prepared in anticipation of litigation from discovery by opposing counsel, so that attorneys can freely prepare for litigation without fear that opposing counsel may see those efforts. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Federal Rule of Civil Procedure 26(b)(3) codifies work product protection and specifies that "a party may not discover documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

There are two types of work product protection: fact work product, which applies to factual information gathered in anticipation of litigation, and opinion work product, which protects an attorney's mental impressions, opinions, and legal theories. Fact work product materials may be discoverable, notwithstanding the protection, if the requesting party shows "substantial need" for the materials in order to prepare its case, and it cannot obtain those materials elsewhere without "undue hardship." Fed. R. Civ. P. 26(b)(3)(A). Once the party invoking work product privilege carries its burden of demonstrating that the protection applies, the burden then shifts to the requesting party to show it has the requisite substantial need and cannot otherwise obtain the materials without undue hardship. *Bridgewater*, 286 F.R.D. at 639-40. Unlike factual work product, opinion work product enjoys "almost absolute immunity" from discovery. *See Williamson v. Moore,* 221 F.3d 1177, 1182–83 (11th Cir. 2000) (citing *Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir. 1994)).

As with many work product protection disputes, a critical question underlying this Motion is whether the emails at issue were actually prepared in anticipation of litigation. Documents prepared for a business purpose do not enjoy work product protection even if the preparing party "is aware that the document may also be useful

5

in the event of litigation." *Bridgewater*, 286 F.R.D. at 641 (internal quotation omitted). In evaluating whether a document was prepared in anticipation of litigation, courts in this Circuit routinely look to the "primary motivating purpose" of the document in question, not whether litigation was imminent. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).[1]

### b. The Thirteen Email Chains

The email chains are easily broken down into several discrete time periods, which proves useful in evaluating Defendants' assertion of work product protection.

First, there are several email chains from 2011, the time when Michal Mathews, a Heffernan Account Operations Manager, realized, while performing a routine review of Guarantee's file, that the Leon Tort Claim had not been reported to Catlin, Guarantee's excess insurer. As discussed above, Defendants then investigated internally to ascertain why the claim was not reported to Catlin, and upon conclusion of that investigation, decided to put their *own* E&O carrier on notice of the issue as an incident but not to simultaneously notify Guarantee of the issue. [ECF No. 173, pp. 1-2].

While at least one of the emails from this time period succinctly mentions that Guarantee *may* have a potential claim against Defendants for not reporting the Leon Tort Claim to Catlin, the primary motivating purpose of creating the 2011 emails was clearly not in anticipation of litigation. Instead, Defendants simply were engaging in a

---

[1] The Eleventh Circuit has adopted as binding all Fifth Circuit opinions issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

6

review of Guarantee's file, a review done in the ordinary course of business -- not because Defendants at that time anticipated litigation. Once they realized they had failed to report the Leon Tort Claim to Catlin, Defendants then investigated to determine why that occurred. Still, email traffic related to this investigation was primarily motivated by a business purpose -- Guarantee is Defendants' customer, and Defendants were determining if and how they had failed to properly care for that customer.

Defendants then decided to notify their own E&O carrier of the oversight. Still, this was primarily motivated by a business purpose, namely, to protect themselves financially from any potential, hypothetical exposure related to their failure to report the Leon Tort Claim to Catlin. While at this time there may have also been a concern over potential litigation, the primary purpose of relating an incident to one's E&O insurer is to later, if necessary, obtain coverage for that incident -- not to aid in preparing for a potential litigation.

Moreover, Defendants at this time also decided not to notify Guarantee of the issue. But, even then, this was more of a business decision than a decision related to anticipated litigation. Were that decision primarily motivated by anticipated litigation, Defendants likely would have instead opted to inform Guarantee of the issue, to protect themselves from a claim in a lawsuit that they 'hid the ball' on the issue -- which is one of the very claims at issue in this case. [ECF No. 151]. Instead, Defendants apparently

decided they had nothing to gain from telling their customer, Guarantee, about a potential oversight, and that if they did not inform Guarantee, there was a good chance the issue would never come up because the Leon Tort Claim, initially characterized as baseless, would never reach the dollar amount necessary to require coverage by the excess insurer. Defendants have not met their burden of showing the 2011 emails are protected work product, and the Undersigned **grants** Guarantee's Motion to compel production of the 2011 emails.

The second set of emails date from early in 2013 (February through May), the time when Guarantee first actively inquired of Defendants whether they had put Catlin on notice of the Leon Tort Claim. As with the 2011 emails, there is some reference within these emails that there *could* be a claim against Defendants for not reporting the claim. But, like the main motivation for the 2011 emails, the primary motivating purpose of these emails also appears to be to investigate what exactly happened, both in 2009 when the Leon Tort Claim arguably should have been reported to Catlin, and in 2011, when Defendants realized their error. The primary motivating purpose of these emails *is not* to prepare for potential litigation. Rather, the primary motivating purpose is to again investigate the issue, in order to properly respond to Guarantee's inquiry about whether the Leon Tort Claim was reported to Catlin.

It may also be that Defendants were at that time anticipating litigation, and that that anticipation even colored how they responded to Guarantee's inquiry. But, the

*primary motivating purpose* of these emails is to respond to a customer inquiry, not to prepare for potential litigation. As such, Defendants have not met their burden of showing these emails are protected and the Undersigned **grants** Guarantee's Motion to compel production of the February to May 2013 emails.

The third set of emails date from September 2013. At this point, Guarantee had already made a claim against Defendants for their failure to timely notify Catlin of the Leon Tort Claim. [ECF No. 173, p. 3]. The parties were discussing a potential contribution by Defendants to the Leon Tort Claim settlement. [*Id.*] Defendants ultimately did not contribute to the settlement, and this litigation was filed a short time later, on October 25, 2013. [ECF No. 1]. The Undersigned has reviewed the September 2013 emails and finds that the primary motivating purpose for their creation is clearly in anticipation of litigation and that the materials are therefore protected work product. These emails relate directly to Defendants' effort to gather materials in preparation for litigation. Defendants have met their burden to show the September 2013 emails are protected. Guarantee has not argued that the materials are nonetheless subject to discovery. As such, the Undersigned **denies** Guarantee's motion to compel production of the late 2013 emails.

### III. Conclusion

For the reasons outlined above, Guarantee's Motion to Compel Production of Documents Being Withheld Based on an Alleged Work Product Privilege is **granted in part and denied in part.** Those emails dated from 2011, and from February through May of 2013 must be produced to Guarantee **within three days of this Order**. Those emails dated September 2013 are protected work product and do not have to be produced to Guarantee.

**DONE AND ORDERED** in Chambers, in Miami, Florida, October 15, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
Honorable Jose E. Martinez
All Counsel of Record